MARSHALL, DENNEHEY, WARNER, COLEMAN & GOGGIN, PC

v.

Jack H. BOYAJIAN; Boyajian & Brandon Legal Group, P.C.; JBC & Associates Legal Group, PC; JBC & Associates, Inc.; Boyajian Law Offices, PC; Outsource Recovery Management, Inc.; Marvin Brandon; Karen Wachs, Jack H. Boyajian and Marvin Brandon, Appellants.

No. 08–3573.

United States Court of Appeals, Third Circuit.

Submitted Pursuant to Third Circuit LAR 34.1(a) Nov. 6, 2009.

Filed: Jan. 22, 2010.

James W. Gicking, Esq., Marshall, Dennehey, Warner, Coleman & Goggin, Philadelphia, PA, for Appellee.

Jack H. Boyajian Paramus, NJ, pro se.

Karen Wachs, Morristown, NJ, pro se.

Marvin Brandon, Paramus, NJ, pro se.

BEFORE: SCIRICA, Chief Judge, JORDAN and COWEN, Circuit Judges.

OPINION

COWEN, Circuit Judge.

Defendants Jack H. Boyajian and Marvin Brandon ("Appellants") appeal, pro se, from the judgment entered against them by the United States District Court for the Eastern District of Pennsylvania. We will affirm.

I.

Plaintiff Marshall, Dennehey, Warner, Coleman & Goggin, P.C. ("Marshall Dennehey") filed a complaint in the Philadelphia County Court of Common Pleas against the Appellants, Karen Wachs, and a number of corporate entities ("Corporate Defendants"). Marshall Dennehey alleged that it entered an agreement with the Defendants to defend them in a number of lawsuits arising out of their debt collection activities. However, the Defendants (except for Wachs) allegedly defaulted by failing to pay outstanding legal fees in the amount of approximately $160,092.76. In addition to this breach of contract claim, Marshall Dennehey asserted a cause of action for unjust enrichment.

The matter was removed to the District Court, and a bench trial was conducted. The District Court made its requisite findings of fact and conclusions in a memorandum and order entered on the docket on July 23, 2008.

The District Court initially noted that Brandon and Wachs are attorneys who at various times served as law partners or associates of Boyajian. In turn, Boyajian was the principal partner and owner of the Corporate Defendants. The Appellants acted pro se at trial, and the Corporate Defendants went unrepresented and tendered no defense. Marshall Dennehey also agreed to dismiss its claims against Wachs.

According to the District Court, the evidence "established that, at the request of Karen Wachs and Jack Boyajian, Marshall Dennehey agreed to provide legal representation of Defendants in regard to multiple lawsuits filed against them arising out of their various debt collection activities, including several class actions brought against Defendants under the Fair Debt Collection Act 15 U.S.C. § 1692." (A3.) Marshall Dennehey's services were initially retained through "a series of e-mails, dated April 14, 2004 to May 10, 2004, that were exchanged between Plaintiff and Ms. Wachs and Mr. Boyajian." (*Id.*) As confirmed by the correspondence between the parties, Marshall Dennehey was retained under the same terms for the subsequent lawsuits. In turn, it performed legal services as set forth in the documentation submitted at trial, and the Defendants received and accepted these services. According to the District Court, the hourly rates charged for these services, specifically $200 in the class action matters and $175 for other cases, were fair and reasonable. Nevertheless, despite repeated efforts on the part of Marshall Dennehey, the Defendants still failed to pay the outstanding balance of at least $160,092.76.

Having thereby laid out the grounds for the Defendants' liability for breach of contract, the District Court specifically addressed and rejected two contrary arguments presented by the Defendants, namely that the claims against them were barred by the Pennsylvania Statute of Frauds and that they were not liable because Marshall Dennehey failed to provide them with the requisite monthly invoices.

Turning to the unjust enrichment cause of action, the District Court observed "that Defendants requested and received from Marshall Dennehey the benefit of its legal services under circumstances in which it would be unjust for Defendants not to pay for those services." (A6.) The District Court disagreed with the Defendants' assertion that Marshall Dennehey spent too much time on any one matter, finding that the Defendants were provided skilled representation and that it was circumstances beyond Marshall Dennehey's control, "including the conduct of its own clients," which prevented it from resolving the lawsuits in a less expensive and speedier manner. (A7.)

Based on these findings of fact and conclusions of law, the District Court entered judgment in favor of Marshall Dennehey and against the remaining Defendants (including the Appellants) in the amount of $160,092.76. This appeal followed.

## II.

The Appellants argue that the District Court committed reversible error by holding them "responsible to pay for alleged legal fees due to Plaintiff for services rendered to the *Corporate Defendants* in several class action lawsuits."[1] (Appellants'

---

1. The District Court possessed jurisdiction over this removed diversity case pursuant to 28 U.S.C. § 1332. We have appellate jurisdiction under 28 U.S.C. § 1291. We exercise

Br. at 6 (emphasis added).) They therefore contend that the District Court offered no explanation for why it pierced the corporate veil to impose individual liability on them, especially when Brandon himself was neither an officer nor a shareholder of any Corporate Defendant. According to the Appellants, "Defendants did not request Plaintiff to provide them legal services individually and Plaintiff did not provide the Defendants or the Corporate Defendants a retainer agreement outlining their professional relationship." (*Id.*) We nevertheless find that the District Court committed no reversible error in holding the Appellants liable for the unpaid legal fees.

As Marshall Dennehey addresses in some detail in its appellate brief, the record contained sufficient evidence to support finding that the Appellants either breached their contract or were unjustly enriched by requesting, receiving, accepting, and then not paying for legal services. For instance, the Appellants acknowledged in the District Court that they were named as defendants in thirteen of the debt collection lawsuits defended by Marshall Dennehey.[2] In fact, the District Court heard testimony that the defense of these two men was an important component of the debt collection litigation, especially in light of the evidently minimal assets possessed by the Corporate Defendants. Wachs, who served as the liaison with Marshall Dennehey, testified that she was never instructed to obtain separate retainer agreements for the Appellants when they were individually named as defendants. She further told the District Court that she informed Boyajian about such lawsuits and briefed him on the strategy and issues raised in the litigation. Brandon likewise testified that he knew that he was named as a defendant in a number of cases and that Marshall Dennehey was retained to represent him. The record also indicated that Boyajian wanted Marshall Dennehey "to make [the plaintiffs' counsel in one of the debt collection actions] go through all the hoops" in his attempt to obtain discovery regarding Boyajian's personal net worth. (A81 (emphasis omitted).)

The Appellants admittedly point to other evidence possibly supporting their position on appeal. But it is not our job to engage in our own fact-finding. *See, e.g., Ragan*, 62 F.3d at 507 (stating that appellate court may not substitute its own findings of fact). In the end, we must conclude that the District Court's findings with respect to the Appellants were *neither* " 'completely devoid of a credible evidentiary basis' " *nor* lacking in any "rational relationship to the supporting data." *Id.* (citation omitted).

### III.

For the foregoing reasons, we will affirm the judgment of the District Court.

---

plenary review over the District Court's legal conclusions, while its findings of fact are reviewed for clear error. *See, e.g., Ragan v. Tri-County Excavating, Inc.,* 62 F.3d 501, 506 (3d Cir.1995); *Voest–Alpine Trading USA Corp. v. Vantage Steel Corp.,* 919 F.2d 206, 211 (3d Cir.1990) This means that a factual finding may be overturned " 'if it is completely devoid of a credible evidentiary basis or bears no rational relationship to the supporting data.' "

*Ragan,* 62 F.3d at 507 (quoting *Haines v. Liggett Group, Inc.,* 975 F.2d 81, 92 (3d Cir. 1992)). The parties also do not dispute the District Court's application of Pennsylvania law.

**2.** In their appellate brief, the Appellants likewise state that they were specifically named as defendants in seven lawsuits.